UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATHANIEL L. TINDEL, M.D., LLC, NATHANIEL L.
TINDEL, M.D., individually, HARRISON T. MU, M.D.,
and KEVIN HEFFERNAN,

5:22-cv-971 (BKS/ATB)

Plaintiffs,

v.

EXCELLUS BLUE CROSS BLUE SHIELD,[1]

Defendant.

---

**Appearances:**

*For Plaintiffs:*
Roy W. Breitenbach
Harris Beach, PLLC
333 West Washington Street, Suite 200
Syracuse, NY 13202

Daniel S. Hallak
Harris Beach PLLC
333 Earle Ovington Boulevard, Suite 901
Uniondale, NY 11553

*For Defendant:*
Gwendolyn C. Payton
Kilpatrick Townsend & Stockton LLP
1420 5th Avenue, Suite 3700
Seattle, WA 98101

Frederick L. Whitmer
Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036

---

[1] It appears that the correct name of this entity is Excellus BlueCross BlueShield, (*see* Dkt. No. 17), which is how the Court has referred to it in this decision.

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiffs Nathaniel L. Tindel, M.D., LLC, Nathaniel L. Tindel, M.D., Harrison T. Mu, M.D., and Kevin Heffernan bring this action against Defendant Excellus BlueCross BlueShield, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. and New York state law. (Dkt. No. 12 (complaint)).[2] Presently before the Court is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 17). The parties have filed responsive briefing. (Dkt. Nos. 25, 26). For the following reasons, Defendants' motion is granted in part and denied in part.

**II.    FACTS**[3]

Mr. Heffernan, a beneficiary of Defendant's "employer-provided group health plan" (the "Plan"), presented to the emergency room at Lenox Hill Hospital on August 20, 2019. (Dkt. No. 12, ¶¶ 1, 13). Mr. Heffernan was diagnosed with "acute and rapid progressive bilateral extremity weakness, atrophy, gait disturbance, balance difficulty, and cervical myelopathy due to spinal cord compression." (*Id.* ¶ 13). Dr. Tindel, a board-certified orthopaedic surgeon who specializes in the spine and scoliosis, and Dr. Mu, a board-certified neurosurgeon, were the on-call specialists at the hospital that day. (*Id.* ¶¶ 5–7, 14). On August 21, 2019, Dr. Tindel, Dr. Mu, and Nathaniel L. Tindel, M.D., LLC (together, the "Provider Plaintiffs") performed "an anterior cervical interbody discectomy and decompression of the spinal cord and nerve roots with

---

[2] Plaintiffs initiated suit in New York Supreme Court, Onondaga County, on August 19, 2022, by filing a summons with notice. (Dkt. No. 1-2). Defendant removed the action to this Court by notice of removal on September 15, 2022, based on federal question jurisdiction. (*See generally* Dkt. No. 1).

[3] The facts are drawn from the complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). As discussed below, the Court declines to consider the document submitted with Defendant's motion to dismiss.

2

bilateral foraminotomies and osteophytectomies, application of anterior plate and screws C5–C7, structural graft and local bone graft, and posterior cervical fusion C3–C7." (*Id.* ¶ 15). Plaintiffs allege that from August 20 to 21, 2019, Mr. Heffernan "was suffering from an emergency medical condition" which the Provider Plaintiffs were obligated by federal law to treat. (*Id.* ¶¶ 25–28).

Plaintiffs allege that the Provider Plaintiffs are "the assignee[s] and authorized representative[s] of Heffernan, a Plan beneficiary." (*Id.* ¶ 52). Before the Provider Plaintiffs performed the emergency procedures on Mr. Heffernan, "Defendant, through its representative, Bridget, represented to the [Provider Plaintiffs] that the services would be covered by the Defendant health plan, and the fee schedule used was the local usual and customary rates based on the 70th percentile of the Fair Health database." (*Id.* ¶ 16). The Provider Plaintiffs "[r]easonably reli[ed] on this representation." (*Id.* ¶ 17). Defendant "authorized" Mr. Heffernan's admission to the emergency department and the emergency procedures under authorization number #MA1455903. (*Id.* ¶¶ 19, 36). Because of the "emergency conditions," there was "no time" for Mr. Heffernan "to seek out an 'in-network' provider." (*Id.* ¶ 38).

After performing the procedures, the Provider Plaintiffs submitted claims to Defendant for reimbursement in the amount of $357,480.00. (*Id.* ¶ 18). Defendant reimbursed the Provider Plaintiffs in the amount of $3,375.95, "approximately 1% of the total billed charge," leaving an unreimbursed amount of $354,104.05. (*Id.* ¶¶ 4, 19). The Provider Plaintiffs "timely appealed this denial to Defendant," but Defendant "failed to negotiate in good faith to resolve the claim and refused to provide any additional reimbursement for the services provided to Heffernan." (*Id.* ¶¶ 23–24; *see also id.* ¶ 48 (alleging that Defendant has, among other things, refused to provide the "specific reason or reasons for the denial or underpayment of claims" and refused to

provide the "specific plan provisions relied upon to support its denials or underpayments")). Generally, Plaintiffs allege that (1) the Plan "was obligated to reimburse out-of-network physicians . . . for emergency services rendered to Plan beneficiaries at the physicians' billed charges," (2) federal regulations obligated Defendant to reimburse the Provider Plaintiffs "significantly more than the amount at which it reimbursed them," and (3) New York law "requires that treating physicians be paid a fair value for their services when providing care to a patient with an emergency medical condition." (*Id.* ¶¶ 29, 32, 34).

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ANALYSIS

Plaintiffs' complaint asserts seven causes of action for: (1) enforcement of the terms of the Plan under ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) declaratory and injunctive relief to remedy Defendant's "failure to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claim procedure regulations" under ERISA, 29 U.S.C. § 1132(a)(3); (3) breach of the Plan; (4) breach of an implied-in-fact contract between Defendant

and the Provider Plaintiffs; (5) unjust enrichment; (6) tortious interference with a contractual relationship between the Provider Plaintiffs and Mr. Heffernan; and (7) breach of contract of which the Provider Plaintiffs are intended beneficiaries. (Dkt. No. 12, ¶¶ 51–111). Defendant moves to dismiss the Provider Plaintiffs' ERISA claims for lack of standing and all Plaintiffs' state-law claims as preempted by ERISA. (*See generally* Dkt. No. 17-1). Defendant does not move to dismiss Mr. Heffernan's ERISA claims. (*Id.*).

### A. Materials Outside the Complaint

Defendant attaches a document entitled "Syracuse University Medical Benefits" to its motion to dismiss which it asserts should be considered as incorporated by reference in or integral to the complaint. (*See* Dkt. No. 17-1, at 4 n.1; Dkt. No. 17-2). Defendant refers to the document as "the Plan" and also as the "Summary Plan Description." (Dkt. No. 17-1, at 3–4). Plaintiffs respond that the "health plan documentation" Defendant attaches is not incorporated by reference in the complaint. (Dkt. No. 25, at 7–8).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or

accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

In similar cases, courts routinely find that ERISA plan documents are integral to the complaint and therefore may be considered in deciding a motion to dismiss. *E.g.*, *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) ("[T]he Court may consider the plan documentation submitted by defendants here, because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint."); *Cent. States, Se. & Sw. Area Health, & Welfare Fund v. Gerber Life Ins. Co.*, 984 F. Supp. 2d 246, 249 (S.D.N.Y. 2013) (considering ERISA plan documentation because the plan "is directly referenced in the complaint and is the basis of this action" (citation omitted)); *see also Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) (considering "the Plan and the Summary Plan Description" on a motion to dismiss "because they are essential to the plaintiffs' ERISA claims and incorporated by reference").

In letter briefing directed by the Court to clarify the parties' position on whether the document submitted with Defendant's motion to dismiss is integral to the complaint, (*see* Dkt. No. 28), Plaintiffs state that they "do not have any reason to believe" that the document, which they refer to as "the ERISA plan" is not "authentic or accurate," (Dkt. No. 29, at 1). However, Plaintiffs assert that the document "contains summaries of benefits and other extraneous materials that are inappropriate to consider" and object to the Court's consideration of the

6

document. (*Id.*). Plaintiffs argue that "it is unclear at this time what portions [of the document] constitute plan terms as opposed to summary plan descriptions that may be applicable" to Mr. Heffernan. (*Id.* at 2). Plaintiffs further argue that summary plan descriptions "do not themselves constitute the terms of the plan" for purposes of 29 U.S.C. § 1132(a)(1)(B). (*Id.* (quoting *Cigna Corp. v. Amara*, 563 U.S. 421, 438 (2011))).

Defendant responds that a summary plan description can "function[] as the document providing benefits and defining plan beneficiaries' rights and obligations" and that such is the case here. (Dkt. No. 30, at 2). To support this assertion, however, Defendant attaches another document: the "Syracuse University Medical Benefits Plan." (Dkt. No. 30-1). Defendant asserts that this Plan document "does not itself detail the Plan's benefits or describe the rights and obligations of beneficiaries" but that it "expressly incorporates the terms of the Summary Plan Description, which defines Plaintiff Heffernan's rights and obligations under the Plan." (Dkt. No. 30, at 2 (citing Dkt. No. 30-1, at 20)). Defendant argues that *Amara* "does not prevent a summary plan description from functioning as the document providing benefits and defining plan beneficiaries' rights and obligations." (*Id.*). Plaintiffs have not had an opportunity to respond to this argument.

Here, on this record, in light of the parties' dispute regarding the plan terms, the Court finds that there is a "material disputed issue[] of fact regarding the relevance of" the Syracuse University Medical Benefits document submitted with Defendant's motion to dismiss, and the Court declines to consider the document. *Faulkner*, 463 F.3d at 134.

### B. Provider Plaintiffs' ERISA Claims

Defendant moves to dismiss the Provider Plaintiffs' ERISA claims on the grounds that such claims are barred by the Plan's anti-assignment provision; the Plaintiffs' allegations of waiver, ratification, and estoppel are conclusory; and the Provider Plaintiffs otherwise lack

7

standing under ERISA. (Dkt. No. 17-1, at 6–13).[4] Plaintiffs respond that the Court should not consider the anti-assignment provision contained in the document submitted with Defendant's motion to dismiss and that, in any event, Defendant waived and/or is estopped from enforcing any anti-assignment provision. (Dkt. No. 25, at 7–11; *see also* Dkt. No. 12, ¶ 55 (alleging that, "[e]ven if the Plan prohibits an assignment of benefits by Heffernan . . . , Defendant waived any purported anti-assignment provisions, ratified the assignment of benefits, and waived or is estopped from using any purported anti-assignment provision against [the Provider Plaintiffs]")).

"Section 502(a)(3) unambiguously provides that a civil action under ERISA may be brought 'by a participant, beneficiary, or fiduciary.'" *Am. Psychiatric Ass'n*, 821 F.3d at 360 (quoting 29 U.S.C. § 1132(a)(3)); *see also* 29 U.S.C. § 1132(a)(1) (providing that a civil action may be brought by "a participant or beneficiary"). Courts have "consistently read" this provision as "strictly limiting 'the universe of plaintiffs who may bring certain civil actions.'" *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) (citation omitted). However, the Second Circuit has "carved out a narrow exception to the ERISA standing requirements to grant standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017) (brackets, internal quotation marks, and citation omitted). Thus, although a plaintiff who establishes the "existence of a valid assignment" may prevail on an ERISA claim, a valid anti-assignment provision renders a plaintiff's acceptance of an

---

[4] Although the parties refer to whether the Provider Plaintiffs have "standing" under ERISA, what was formerly called "statutory standing" is "not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). "This inquiry 'does not belong' to the family of standing inquiries, because 'the absence of a valid cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case.'" *Id.* (quoting *Lexmark*, 572 U.S. at 128 n.4) (internal citation and ellipses omitted).

8

assignment "ineffective—a legal nullity." *Superior Biologics NY, Inc. v. Aetna, Inc.*, No. 20-cv-5291, 2022 WL 4110784, at *6, 2022 U.S. Dist. LEXIS 162494, at *17 (S.D.N.Y. Sept. 8, 2022) (citations omitted); *see also McCulloch*, 857 F.3d at 147 ("Based on the plain language of th[e anti-assignment] provision, McCulloch's acceptance of an assignment was ineffective—a legal nullity.").

Here, Defendant relies on an anti-assignment provision in the Syracuse University Medical Benefits document attached to its motion to dismiss to argue that any assignment the Provider Plaintiffs received from Mr. Heffernan was invalid and that they therefore do not have standing, i.e., do not have a cause of action, under ERISA. (Dkt. No. 17-1, at 6–13; *see* Dkt. No. 17-2, at 56). However, the Court has concluded that it may not consider the outside document, and the complaint itself does not allege whether the Plan has an anti-assignment provision. (*See* Dkt. No. 12, ¶¶ 52–55 (alleging that the Provider Plaintiffs are "the assignee[s] and authorized representative[s]" of Mr. Heffernan and that, "[e]ven if the Plan prohibits an assignment of benefits," such provision is not enforceable due to waiver, ratification, and/or estoppel)). Thus, because the Court may not consider the anti-assignment provision, the Court cannot evaluate the parties' arguments regarding the Provider Plaintiffs' standing.[5]

Accordingly, Defendant has not met its burden of demonstrating that the Provider Plaintiffs' ERISA claims must be dismissed and the Court denies this portion of Defendant's motion.

---

[5] Even if the Court were to agree with Defendant that Plaintiffs had not plausibly alleged waiver, ratification, or estoppel, for example, Defendant's motion to dismiss the Provider Plaintiffs' ERISA claims for lack of standing would still have to be denied.

### C.   Preemption of State-Law Claims

Defendant argues that Plaintiff's state-law claims are completely preempted by ERISA and must be dismissed, because those claims all "relate" to the Plan. (Dkt. No. 17-1, at 13–15). Plaintiffs respond that ERISA does not preempt the state-law claims because the claims implicate the "rate of payment" rather than the "right of payment." (Dkt. No. 25, at 13–15).

As an initial matter, the parties' briefs suggest confusion regarding "two separate, but related, doctrines of preemption applicable to ERISA—so called 'complete preemption' and express preemption." *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016). Express preemption "is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption)." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (citation omitted). Express preemption occurs when Congress "withdraws specified powers from the States by enacting a statute containing an express preemption provision." *Id.* (brackets and citation omitted).

The "so-called 'complete preemption doctrine,'" on the other hand, is "distinct from the three forms of defensive preemption." *Id.* Under the complete preemption doctrine, a "plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'" *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009) (citation omitted) (brackets in original). The Supreme Court has held that the civil enforcement mechanism contained in Section 502(a) of ERISA has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'" which can be removed to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (citation omitted); *see id.* at 210 (setting forth two-pronged test to determine if a cause of action is completely preempted by Section 502(a)(1)(B)). Thus, the doctrine of complete preemption is "really a jurisdictional rather

than a preemption doctrine." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327–28 (2d Cir. 2011) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)); *Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 234 n.21 (3d Cir. 2020) ("Complete preemption is a separate, jurisdictional doctrine that in this case arises out of section 502(a)." (citing *Davila*, 542 U.S. at 210)); *Greenbrier Hotel Corp. v. Unite Here Health*, 719 F. App'x 168, 178 (4th Cir. 2018) (distinguishing between "*substantive* ERISA preemption" and "the related—but doctrinally distinct—issue of preemption as a *jurisdictional* inquiry for purposes of removal to federal court").

Here, Defendant argues that Plaintiffs' state-law causes of action are "completely preempted by ERISA" and therefore must be dismissed, and the parties cite many cases applying the doctrine of complete preemption. (*See* Dkt. No. 17-1, at 13–15; Dkt. No. 25, at 13–15; Dkt. No. 26, at 10–12). However, the complaint asserts causes of action under ERISA; there therefore is no question as to the Court's subject-matter jurisdiction and the Court need not analyze the state-law claims under the doctrine of complete preemption. *See Chau*, 167 F. Supp. 3d at 570 (declining to analyze whether state-law claims were completely preempted where the complaint raised a federal claim under Section 502(a) of ERISA); *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17-cv-3477, 2017 WL 6397737, at *3, 2017 U.S. Dist. LEXIS 206010, at *6–8 (E.D.N.Y. Dec. 12, 2017) (same).[6] The Court will instead consider whether the state-law claims are expressly preempted by Section 514 of ERISA.

---

[6] Although Plaintiffs argue that claims are not preempted by ERISA when they involve "underpayment or untimely payment, where the basic right to payment has already been established," (Dkt. No. 25, at 14 (quoting *Montefiore*, 642 F.3d at 331)), the cases Plaintiffs cite all involve the doctrine of complete preemption, and the distinction arises in determining whether a claim can be construed as a colorable claim for benefits under ERISA § 502(a)(1)(B). *See, e.g.*, *Montefiore*, 642 F.3d at 331 (finding claims completely preempted and rejecting argument that the claims involved only the amount of payment, because the claims "implicate[d] coverage determinations under the relevant terms of the Plan"); *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 297–98 (E.D.N.Y. 2014);

Section 514 contains a preemption provision providing, with certain exceptions not relevant here, that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). A state law has a "reference to" an ERISA plan where the law "acts immediately and exclusively upon ERISA plans" or where "the existence of ERISA plans is essential to the law's operation." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016) (citation omitted); *see also Plastic Surgery Center*, 967 F.3d at 230 (reciting different formulations for claims that make impermissible "reference to" ERISA plans, including claims that are "premised on" a plan because "the existence of ERISA plans is essential to the law's operation"; the "court's inquiry must be directed to the plan"; the existence of an ERISA plan "is a critical factor in establishing liability"; or "there simply is *no* cause of action if there is no plan" (citations omitted)). A state law has an impermissible "connection with" ERISA plans if it "governs a central matter of plan administration" or "interferes with nationally uniform plan administration." *Gobeille*, 577 U.S. at 320 (ellipses and citation omitted).

The Second Circuit has further explained that ERISA preempts state statutory claims that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of

---

*Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-cv-8517, 2012 WL 4840807, at *3–4, 2012 U.S. Dist. LEXIS 144921, at *9–11 (S.D.N.Y. Oct. 4, 2012). The parties have not addressed the applicability of these cases to the doctrine of express preemption, and the question of whether a state-law claim relates to an ERISA plan under Section 514 appears broader than whether a cause of action is a colorable claim for benefits under Section 502. *See supra* Section IV.C.

benefits owed to an employee." *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)). And, as relevant here, ERISA preempts those state common law claims "that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Id.* (quoting *Davila*, 542 U.S. at 214).

With these principles in mind, the Court turns to the individual state-law causes of action.

### 1. Breach of Implied-in-Fact Contract

The complaint's fourth cause of action asserts a claim for breach of an implied-in-fact contract between the Provider Plaintiffs and Defendant. (Dkt. No. 12, ¶¶ 84–94). The Provider Plaintiffs allege that a representative of Defendant represented to them that Defendant would pay the Provider Plaintiffs for the procedures to be performed on Mr. Heffernan at the "local usual and customary rates." (*Id.* ¶ 90). Defendant argues that this claim is preempted because it is a "repackaging of Heffernan's purportedly-assigned claims arising under ERISA." (Dkt. No. 17-1, at 14).

Viewing the allegations in the light most favorable to Plaintiffs, the Court concludes that the cause of action for breach of an implied-in-fact contract, as plead, is not expressly preempted by ERISA. Courts have concluded that claims asserted by out-of-network providers seeking to enforce promises or agreements which are independent of the terms of an ERISA plan are not preempted. In *Stevenson v. Bank of New York Co., Inc.*, for example, the Second Circuit held in a complete preemption case that the plaintiff's state-law claims were not preempted by ERISA because the asserted liability did not "derive from the particular rights and obligations established by any benefit plan," but "rather from a separate promise." 609 F.3d 56, 60–61 (2d Cir. 2010) (internal quotation marks and brackets omitted). Similarly, in *Plastic Surgery Center*, the Third Circuit noted that the provider's breach of contract and promissory estoppel claims

13

"arose precisely because there was no coverage under the plans for services performed by an out-of-network provider." 967 F.3d at 231. The court noted that "out-of-network providers do not have pre-existing contractual relationships with the insurer" and therefore, "absent a separate agreement," "there was no obligation for the [provider] to provide services to the plan participants, no obligation for [the insurer] to pay the [provider] for its services, and no agreement that compensation would be limited to benefits covered under the plan." *Id.* Because the plaintiffs had adequately pleaded such separate agreements, the breach of contract and promissory estoppel claims did not make an impermissible reference to the ERISA plans. *Id.* at 230–35.[7] Courts have found such claims not preempted even if a "cursory review of the underlying ERISA plan would be necessary to determine the costs for each service." *Atlantic Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, No. 20-cv-10685, 2022 WL 158658, at *5, 2022 U.S. Dist. LEXIS 8733, at *13 (S.D.N.Y. Jan. 18, 2022) (finding claim for breach of implied-in-fact contract not preempted at motion to dismiss stage because the claim did "not require interpreting the terms of an ERISA plan" and "turn[ed] largely on legal duties generated outside the ERISA context"); *see also Epic Reference Labs*, 2021 WL 4502836, at *10, 2021 U.S. Dist. LEXIS 189008, at *29 (noting that an alleged "promise of reasonable payment is distinct from any obligations that [the insurer] might have had under the plan to the patient" and denying motion to dismiss common law claims as preempted); *cf. McCulloch*, 857 F.3d at 151 (holding that out-of-network provider's promissory estoppel claim was not completely preempted by ERISA because the provider was "suing in his own right pursuant to an independent obligation . . . based on the insurer's independent promise").

---

[7] Defendant makes no argument that the breach of implied-in-fact contract claim has an impermissible "connection with" the Plan by "'govern[ing] . . . a central matter of plan administration' or 'interfer[ing] with nationally uniform plan administration.'" *Epic Reference Labs v. Cigna*, No. 19-cv-1326, 2021 WL 4502836, at *6, 2021 U.S. Dist. LEXIS 189008, at *15–16 (D. Conn. Sept. 30, 2021) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)).

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claim for breach of an implied-in-fact contract.

### 2. Unjust Enrichment

In the fifth cause of action for unjust enrichment, Plaintiffs allege that Defendant was "unjustly enriched" at "the Plaintiff Providers' expense" by "not paying the Plaintiff Providers at a reasonable rate." (Dkt. No. 12, ¶¶ 95–101). Defendant argues that Plaintiffs' unjust enrichment claim is preempted because it "seeks no different remedy from Plaintiffs' ERISA claims" and only "seek[s] to recover the benefits allegedly owed under the Plan." (Dkt. No. 17-1, at 14–15).

The Court concludes that the Provider Plaintiffs' unjust enrichment claim "relates to" the Plan and is therefore expressly preempted by ERISA. Under New York law, an unjust enrichment claim requires proof that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) "equity and good conscience militate against permitting defendant to retain what the plaintiff is seeking to recover." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (citation and brackets omitted). Here, because the nature of the benefit allegedly conferred on Defendant is "premised on the existence of" the Plan, the cause of action "relates to" an ERISA plan and is preempted. In a case "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Plastic Surgery Center*, 967 F.3d at 240 (internal footnote omitted). Thus, the unjust enrichment claim would require the Court to find that "an ERISA plan exists" in order to demonstrate that Defendant "received a benefit" and that retention of that benefit without payment would be unjust. *Id.* at 241–42; *see also Siemens*, 2017 WL 6397737, at *5, 2017 U.S. Dist. LEXIS 206010, at *13 (finding unjust enrichment claim preempted); *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 22-cv-33, 2023 WL 2631798, at *8, 2023 U.S. Dist. LEXIS 50192, at

15

*19–20 (D. Conn. Mar. 24, 2023) (finding unjust enrichment claim preempted because the claim was "premised upon [the defendants'] failure to pay for the services provided by ERISA plans" and therefore "necessarily relates to the 'denial of benefits promised under ERISA-regulated plans'" (quoting *Paneccasio*, 532 F.3d at 114)).[8]

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' unjust enrichment claim.

### 3. Tortious Interference with Contractual Relationship

In the sixth cause of action, the Provider Plaintiffs assert a claim for tortious inference with their contractual relationship with Mr. Heffernan. (Dkt. No. 12, ¶¶ 102–05).[9] Defendant argues that this claim is preempted because it is "based on allegations that [Defendant's] claim denial was wrongful, which arises decisively under ERISA." (Dkt. No. 17-1, at 15).

The elements of tortious interference with contract under New York law are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (citation and internal quotation marks omitted). Here, Plaintiffs allege that Defendant "without justification interfered with" Plaintiffs' contractual relationship by "issuing denials on claims for medically necessary, covered health care services." (Dkt. No. 12, ¶ 104). Plaintiffs' tortious interference claims thus clearly "relates to" the Plan as it requires an assessment of whether

---

[8] To the extent Mr. Heffernan also asserts an unjust enrichment claim, courts routinely find such claims preempted. *E.g.*, *Walker v. Prudential Ins. Co. of Am.*, No. 19-cv-7286, 2020 WL 978515, at *4, 2020 U.S. Dist. LEXIS 34723, at *10 (S.D.N.Y. Feb. 28, 2020) (finding unjust enrichment claim preempted because the only relief sought pursuant to the unjust enrichment claim was the same payment "allegedly owed to [the plaintiff] under the insurance policy").

[9] It does not appear that Mr. Heffernan asserts such a claim, as Plaintiffs allege that the "Plaintiff Providers have been damaged" by the alleged tortious interference. (Dkt. No. 12, ¶ 105).

Defendant wrongfully denied claims submitted under the Plan. *See Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 289–90 (E.D.N.Y. 2021) (finding tortious interference with contract cause of action preempted because the dispute "involve[d] obligations derived from ERISA plans themselves" which therefore were "not independent of ERISA"); *Chau*, 167 F. Supp. 3d at 572 (finding claim for tortious interference with contractual rights expressly preempted).

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' claim for tortious interference with a contractual relationship.

### 4. Breach of Contract: Third Party Beneficiary

Finally, the seventh cause of action asserts a state-law claim for breach of a contract of which the Provider Plaintiffs were "an intended beneficiary." (Dkt. No. 12, ¶¶ 106–11; *see id.* ¶ 110 (alleging that Defendant breached the contract between itself and Heffernan by "failing to pay . . . for covered health care services")). Defendant argues that this claim is preempted as it is "merely a repackaging" of the ERISA claims. (Dkt. No. 17-1, at 15). The Court agrees. The claim clearly "relates to" the Plan, as it is premised on the existence of the Plan—in other words, the existence of the Plan is a "critical factor in establishing liability" and there "simply is *no* cause of action if there is no plan." *Plastic Surgery Center*, 967 F.3d at 230.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' claim for breach of contract as intended beneficiaries.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Excellus BlueCross BlueShield's motion to dismiss (Dkt. No. 17) is **GRANTED in part**; and it is further

**ORDERED** that Plaintiffs' claims for unjust enrichment (fifth cause of action), tortious interference with contractual relationship (sixth cause of action), and breach of contract as intended beneficiaries (seventh cause of action) are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendant Excellus BlueCross BlueShield's motion to dismiss is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: May 9, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge